**COLMAR VOLUNTEER FIRE COMPANY, Petitioner**

v.

**DEPARTMENT OF STATE, BUREAU OF CHARITABLE ORGANIZATIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 7, 2008.

Decided June 5, 2008.

William P. Marshall, Colmar, for petitioner.

Martha H. Brown, Asst. Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Colmar Volunteer Fire Company (Colmar) petitions for review of the September 25, 2007 order of the Secretary of the Commonwealth (Secretary) (1) directing Colmar to provide the Bureau of Charitable Organizations (Bureau) with audited financial statements for Fiscal Years End-

ing (FYE) 2004, 2005 and 2006; and (2) prohibiting Colmar from soliciting charitable contributions until it properly registers with the Bureau pursuant to Section 5(a) of the Solicitation of Funds for Charitable Purposes Act (Act),[1] unless audited financial statements indicate charitable contributions of $25,000 or less annually.[2] This case presents an issue of first impression: whether the use of professional fundraising counsel by a volunteer firemen organization in its direct mailing campaign disqualifies it from the exemption from registration set forth in Section 6(a)(3)(ii) of the Act. In pertinent part, Section 6(a)(3)(ii) provides as follows:

> (a) General rule.—The following charitable organizations shall be exempt from the registration requirements of this act:
>
> ....
>
> (3) A local post, camp, chapter or similarly designated element or a county unit of such elements of:
>
> ....
>
> (ii) *a bona fide organization of volunteer firemen;*
>
> ....
>
> *provided that all fundraising activities of an organization or association under subparagraph ... (ii) ... are carried on by volunteers, members or an auxiliary or affiliate thereof; and those volunteers, members or affiliates receive no compensation directly or indirectly for the fundraising activities.*

10 P.S. § 162.6(a)(3)(ii) (emphasis added). For the reasons that follow, we affirm the Secretary's order.

The background of this case is as follows. On July 27, 2006, the Secretary issued a cease and desist order against Colmar because it was not registered with the Bureau, it failed to respond to the Bureau's request for information and it was soliciting charitable contributions without registering. The Secretary ordered Colmar to cease and desist immediately from soliciting contributions until it registered with the Bureau or provided information that it was exempt from registration. Colmar appealed the cease and desist order and a hearing followed.

It is undisputed that, for purposes of the Act, Colmar is a charitable institution constituted as a volunteer fire department, it is not registered with the Bureau to solicit charitable contributions and it solicited charitable contributions during FYE 2003 through 2006. To wit, Colmar conducted direct mailing campaigns utilizing the services of Municipal Marketing (2003–2005) and Choice Marketing (2006 to the present), both of which are registered with the Bureau as "professional fundraising counsel."[3] The entities' services included pro-

---

1. Act of December 19, 1990, P.L. 1200, *as amended,* 10 P.S. § 162.5(a).

2. Section 5(a) of the Act provides that a charitable organization must file a registration statement with the Department of State unless it meets one of the exemptions found in Section 6 of the Act, 10 P.S. § 162.6. In the proceedings below, Colmar maintained that it was exempt from registration under two exemptions, the one for volunteer firemen organizations and the one for charitable organizations which receive contributions of $25,000 or less annually. Section 6(a)(3)(ii) and (8) of the Act, 10 P.S. § 162.6(a)(3)(ii)

and (8). At the April 2008 oral argument before this court, the parties indicated that there is no dispute that Colmar had charitable contributions in excess of $25,000 for the years in question. January 29, 2007 Hearing, Exhibit C–6; R.R. 110–112a. Therefore, the only issue before us concerns the applicability of the exemption for volunteer firemen organizations.

3. "Professional fundraising counsel" is defined as follows:

> Any person who is retained by a charitable organization for a fixed fee or rate under

viding Colmar with suggested alternatives as to the layout and design for their solicitations, printing the solicitations, stuffing the envelopes with the solicitations and maintaining for Colmar a database of addresses through information provided to them by Colmar.

The Secretary found that the professional fundraising counsel "were compensated for fundraising services provided to [Colmar] due to the fundraising costs incurred by [Colmar] in conducting the direct mail solicitation campaign." Finding of Fact No. 10. Specifically, the entities were paid on a "per piece of mail" basis for the printing and stuffing of the direct mail solicitations.

As for Colmar's part in the fundraising, the Secretary found that it designed the direct mailing campaigns, selected the format and layout of the solicitations and composed the letter requesting the donations. In addition, he found that Colmar received, handled and processed all of the contributions received as a result of those solicitations.

Ultimately, the Secretary determined that Section 6(a)(3)(ii)'s volunteer firemen exemption did not apply because Colmar compensated the professional fundraising counsel for conducting fundraising activities. In so determining, the Secretary acknowledged that the Act does not define

"fundraising activities," but stated that he found guidance in the Act's definition of "fundraising costs:"

Those costs incurred in inducing others to make contributions to a charitable organization for which the contributors will receive no direct economic benefit. Fundraising costs normally include, but are not limited to, salaries, rent, acquiring and maintaining mailing lists, printing, mailing and all direct and indirect costs of soliciting, as well as the cost of unsolicited merchandise sent to encourage contributions. Fundraising costs do not include the direct cost of merchandise or goods sold or the direct cost of fundraising dinners, bazaars, shows, circuses, banquets, dinners, theater parties or any other form of benefit performances.

Section 3 of the Act, 10 P.S. § 162.3.

Moreover, in determining that the professional fundraising counsel's services constituted fundraising activities, the Secretary pointed out that the volunteer firemen exemption

does not provide that the *solicitation* be carried on only by volunteers, etc., who are not compensated directly or indirectly, but that *all fundraising activities* [be] carried on by volunteers. The term solicitation, as defined in the Solicitation Act,[4] is more narrowly defined and is

a written agreement to plan, manage, advise, consult or prepare material for or with respect to the solicitation in this Commonwealth of contributions for a charitable organization, but *who does not solicit contributions* or employ, procure or engage any compensated person to solicit contributions and *who does not have custody or control of contributions* ....
Section 3 of the Act, 10 P.S. § 162.3 (emphasis added).

4. "Solicitation" is defined as follows:

Any direct or indirect request for a contribution on the representation that such contri-

bution will be used in whole or in part for a charitable purpose, including, but not limited to, any of the following:

(1) Any oral request that is made in person, by telephone, radio or television or other advertising or communication media.

(2) Any written or otherwise recorded or published request that is mailed, sent, delivered, circulated, distributed, posted in a public place or advertised or communicated by press, telegraph, television or any other media.

(3) Any sale of, offer or attempt to sell any advertisement, advertising space, sponsorship, book, card, chance, coupon, de-

obviously more limited in scope than the term fundraising activities. The two terms are not synonymous and cannot be used interchangeably as [Colmar] would suggest.

Secretary's adjudication at 10–11 (emphasis in original) (footnote added). The Secretary thus rejected the suggestion that Colmar's input in the direct mailing solicitation campaigns and direct handling of the contributions somehow "alter[ed] the fact that not all of the fundraising activities of [Colmar] were carried on by volunteers or members who did not receive any compensation directly or indirectly for the fundraising activities." *Id.*

■ As an initial matter, we note counsel for the Department's observation that Section 6(a)(3)(ii) of the Act can be characterized as a "partial exemption," meaning that volunteer firemen organizations are only exempt from the registration requirement "provided that all fundraising activities ... [be] carried on by volunteers ... and [that] those volunteers ... receive no compensation...." 10 P.S. § 162.6(a)(3)(ii). Because it is undisputed that Colmar compensated the professional fundraising counsel for their fundraising services, the essential question then becomes whether their actions constituted "fundraising activities," a term for which there is no statutory definition.[5] We turn now to the parties' respective arguments.

Colmar argues that because its professional fundraising counsel did not solicit funds, the Secretary erred in determining that Colmar's use of their services precluded exemption from registration. In so arguing, Colmar maintains that it is the act of soliciting that constitutes fundraising activity.

In addition, Colmar contends that the use of professional fundraising counsel constitutes a fundraising cost, which should not alter its exempt status. It analogizes the fundraising costs associated with putting on a ham dinner as a fundraiser with the costs of conducting a direct mailing campaign. Under this analogy, holding the ham dinner and the mailing itself would constitute the fundraising activities, not assembling the ham dinner components and preparing the mailings.

The Department argues that Colmar is not exempt from registration because it hired and compensated professional fundraising counsel to carry out fundraising activities in contravention of the volunteer firemen exemption. Acknowledging that the legislature did not define the term "fundraising activities," the Department argues that the definition should not be restricted to solicitation activities, but should be construed to include activities designed to induce others to contribute to charitable organizations consistent with the definition of fundraising costs. Moreover, the Department maintains that this court should not pursue statutory construction where the legislative intent to exempt certain charitable organizations from registration only under specific condi-

---

vice, food, magazine, merchandise, newspaper, subscription, ticket or other service or tangible good, thing or item of value.

(4) Any announcement requesting the public to attend an appeal, assemblage, athletic or competitive event, carnival, circus, concert, contest, dance, entertainment, exhibition, exposition, game, lecture, meal, party, show, social gathering or other performance or event of any kind.

Section 3 of the Act, 10 P.S. § 162.3.

5. It is well-settled that, "[w]here a statutory term is without express definition, the definition of that term is a question of law...." *Coleman v. Workers' Comp. Appeal Bd. (Indiana Hosp. and Phico Serv. Co.)*, 577 Pa. 38, 44, 842 A.2d 349, 353 (2004). Our review of a question of law is plenary. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

tions is clear from the plain language of the statute. Section 1921 of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa.C.S. § 1921.

■ We reject Colmar's argument that the services of the professional fundraising counsel do not constitute fundraising activities because only the act of soliciting constitutes "fundraising activities." As the Secretary noted in his decision, Section 6(a)(3)(ii) of the Act unambiguously provides that volunteer firemen organizations are exempt provided that only their members conduct "fundraising activities," not simply that only their members conduct "solicitations." The legislature set forth an explicit multi-part definition of "solicitation" in Section 3 of the Act [6] and easily could have inserted that term-of-art in Section 6(a)(3)(ii)'s exemption provision, had that been its intent. Instead, it chose to insert the more general term "fundraising activities." We, therefore, agree with the Secretary's determination that the two terms are not synonymous and cannot be used interchangeably.

■ Moreover, although the term "fundraising activities" is not defined, we conclude that if the costs incurred to induce others to make charitable contributions are fundraising costs, then the actions of the persons or entities carrying out the fundraising tasks associated with those costs constitute "fundraising activities." Under this construction, the professional fundraising counsel's activities (e.g., suggesting alternatives for the layout and design of the solicitations, stuffing the envelopes with the solicitations and maintaining a database of addresses) certainly were for purposes of persuading the recipients of the mailings to make charitable contributions to Colmar.[7] Similarly, volunteers participating in charitable car washes or spaghetti dinners do so in an attempt to encourage others to contribute to the charitable sponsors of those events. Accordingly, we conclude that the Secretary did not err in determining that Colmar's use of professional fundraising counsel in its direct mailing campaigns precluded it from qualifying for the exemption from registration.

■ Finally, Colmar asserts that the Secretary's penalty in the form of an absolute preclusion from fundraising is overbroad and harsh such that it should be limited to being precluded from using professional fundraising counsel unless it registers with the Bureau. It maintains that this court on appeal is duty bound to order reconsideration where the penalty constitutes a manifest abuse of discretion. *Shober v. State Real Estate Comm'n*, 62 Pa. Cmwlth. 110, 435 A.2d 284 (1981).

In response, the Department alleges that the Secretary has authority under Section 17 of the Act, 10 P.S. § 162.17, to issue a cease and desist order prohibiting all fundraising activities where he has found that the charity is operating in violation of the Act. The Department further asserts that permitting Colmar to terminate all contracts with professional fundraising counsel and solicit contributions using volunteers from this time forward, without first complying with registration for the years it solicited in violation of the Act, would not further the purposes of the Act or encourage Colmar's future compliance. The Department emphasizes that

---

**6.** 10 P.S. § 162.3.

**7.** We note that the Secretary specifically found that there is nothing in the record to suggest that Colmar compensated any person to conduct solicitations in contravention of the exemption from registration for entities which receive contributions of $25,000 or less annually. Section 6(8) of the Act, 10 P.S. § 162.6(8).

Colmar's violation was not in securing the services of the professional fundraising counsel, but in failing to register with the Bureau once it secured their services and in failing to respond to the Bureau's requests for financial information.

We note that Section 2 of the Act provides that the legislature's intent was that the Act "protect the citizens of this Commonwealth by requiring full public disclosure of the identity of persons who solicit contributions from the public, the purposes for which such contributions are solicited and the manner in which they are actually used," in addition to "merely requir[ing] proper registration of charitable organizations, professional fundraisers and professional solicitors." 10 P.S. § 162.2. In addition, as the Department notes, when ascertaining the intent of the legislature in enacting a statute, it is presumed that it favors the public interest as against any private interest. Section 1922(5) of the Statutory Construction Act, 1 Pa.C.S. § 1922(5). To this end, the legislature in Section 17 of the Act granted the Secretary authority to enforce the Act on behalf of the Commonwealth. 10 P.S. § 162.17. Accordingly, we do not find that the Secretary erred in prohibiting Colmar from soliciting charitable contributions until it properly registers with the Bureau and presents audited financial statements in accordance with the September 25, 2007 order.

In conclusion, while this court certainly appreciates the great public service rendered by such charitable entities as volunteer firemen organizations, we also acknowledge the general public's expectations as expressed by the legislature that such organizations will follow the law by protecting and accounting for contributions made in good faith. Unfortunately, what is necessary to operate volunteer firemen organizations in today's world requires greater sums of money and, commensurately, greater fiscal oversight.

For the reasons stated above, we affirm.

### ORDER

AND NOW, this 5th day of June, 2008, the order of the Secretary of the Commonwealth in the above-captioned matter is hereby AFFIRMED.